# Stone v. The Delaware, Lackawanna and Western Railroad Company, Appellant.

*Eminent domain—Railroad companies—Damages—Measure of damages—Farm land—Adaptability for other purposes—Evidence —Admissibility—Rental value—Cross-examination — Selling price of other properties—Charge—Failure to request.*

1. The rule in ascertaining the measure of damages in eminent domain proceedings is that the jury may consider, not only the present use and condition of the property, but the use to which it was adapted at the time of taking, the prospective advantages at that time attaching to it, a present value for any purpose to which it could reasonably be anticipated the land would in the future be applied, excluding, however, speculative values.

2. At the trial of an appeal from an award of viewers in condemnation proceedings where it appeared that the land condemned was suburban property and that a number of similar tracts in the neighborhood had been plotted and sold as building lots, the trial judge properly instructed the jury that "the witnesses gave their reasons for arriving at the conclusion that this was not only a very valuable piece of land as a farm; that it was available for town lots or plots in larger or smaller tracts; that within the last

twenty-five or thirty years a good many plots of land have been laid out and have been sold at various prices, and basing their opinions upon the sale of lands thereabouts and of the possible future growth of the community, they arrived at the figures to which they have testified. This is a proper way of arriving at a conclusion under the facts of this case, and it is for you to take into consideration their accuracy and whether their opinions are entitled to the weight plaintiff asks to be given to them."

3. Where in such case the court charged the jury that they might consider "different elements that enter into the damages such as the inconvenience in getting from one part of the farm to the other; the destruction of the living spring; the damage to the orchard; the cutting off of the view; the use of the old road as compared with the new one which was put in by the defendant company, and in this way to add a total, as it were, of the entire amount of damage caused to the farm taken as a whole," but had previously charged the jury to find the damages to the farm in its entirety as it was at the time of taking, the contention that the jury were permitted to fix the specific sum for each element separately and to reach a verdict by aggregating the several amounts was without merit.

4. Where in such case the court gave a brief outline of the case; enumerated the contentions of each party and briefly summarized the testimony of the expert witnesses relating to the question of damages; instructed the jury that they were to find the damages to the farm in its entirety at the time of taking, and briefly referred to the question of credibility of the witnesses, leaving to the jury the determination of the amount of the verdict, defendant was not in a position to complain that in view of the volume of the testimony the comments of the court thereupon were inadequate, in the absence of a request at the trial for a more extended charge, especially where no points were submitted asking for specific instructions.

5. While the rental value of property may be a proper element to consider in forming an opinion of the market value where the property is adaptable only for a certain purpose, such evidence is not admissible where it appears that the property is adaptable for a number of purposes so that its rental value is not commensurate with its market value.

6. Where in such case, plaintiff and another witness testified that the value of the property for farming purposes did not represent the actual value of the land, but that it had a greater value for other purposes, such as a suburban residence, or for building sites, and that its value was beyond that of the ordinary farm intended exclusively for agricultural purposes, it was not reversible error to

refuse to permit defendant on cross-examination to question the witnesses as to the rental value of the property when devoted exclusively to farming purposes.

7. Where a witness testifies to part of a transaction, the opposing party may insist upon the complete transaction being shown, even though such evidence be otherwise inadmissible.

8. Where in such case defendant was permitted, without objection, to cross-examine witnesses for plaintiff concerning other sales of real estate in the vicinity and the prices obtained therefor, the plaintiff was properly permitted, on redirect examination of plaintiff's witnesses, and on cross-examination of defendant's witnesses, to ask them to state the selling prices of other similar properties in the neighborhood.

Argued Feb. 19, 1917. Appeal, No. 377, Jan. T., 1917, by defendant, from judgment of C. P. Lackawanna Co., Oct. T., 1912, No. 707, on verdict for plaintiff, in case of John L. Stone v. The Delaware, Lackawanna and Western Railroad Company. Before BROWN, C. J., POTTER, STEWART, FRAZER and WALLING, JJ. Affirmed.

Appeal from award of viewers in condemnation proceedings. Before O'NEILL, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $13,865 and judgment thereon. Defendant appealed.

*Errors assigned* were instructions to the jury and rulings on evidence.

*J. H. Oliver* and *H. A. Knapp,* of *Warren, Knapp, O'Malley & Hill,* with them *D. R. Reese,* for appellant.— The admission, over defendant's objection, of testimony elicited by plaintiff's counsel as to the prices obtained in the sales of property in the vicinity of the condemned land was reversible error: Brown v. City of Scranton, 231 Pa. 593; Roberts v. Philadelphia, 239 Pa. 339; Girard Trust Co. v. Philadelphia, 248 Pa. 179; Rea v. Pittsburgh & Connellsville R. R. Co., 229 Pa. 106; Bren-

nan v. Pittsburgh & Connellsville R. R. Co., 230 Pa. 228; Friday v. Penna. R. R. Co., 204 Pa. 405.

Defendant was entitled on cross-examination to inquire of a witness the rental value of the property condemned to affect the credibility of the witness.

The charge to the jury was inadequate and misleading: Marine Coal Co. v. Pittsburgh, McKeesport & Youghiogheny R. R. Co., 246 Pa. 478; Shenango & Allegheny R. R. Co. v. Braham, 79 Pa. 447; Parry v. Cambria & Indiana R. R. Co., 247 Pa. 169; Tietz v. Philadelphia Traction Co., 169 Pa. 516; Philadelphia Trust, Safe Deposit & Ins. Co., Executor, v. Philadelphia & Erie R. R. Co., 177 Pa. 38.

Where a case turns on conflicting evidence it is error for the court to neglect to call the jury's attention to the conflict and to explain the relative value of that introduced by each side: Hess v. Williamsport & North Branch R. R. Co., 181 Pa. 492; Richards v. Willard, 176 Pa. 181; Clark v. Union Traction Co., 210 Pa. 636.

*John P. Kelly,* with him *A. D. Dean,* for appellee.— Counsel for defendant, having cross-examined plaintiff's witnesses as to prices paid for certain other properties in the vicinity of the plaintiff's property, it was proper for the court to allow the plaintiff on redirect examination of plaintiff's witnesses and on cross-examination of defendant's witnesses, to inquire as to the price of certain other properties in the vicinity.

The rental value of plaintiff's property for farming purposes would throw no light upon its value and the court properly sustained the objections to the cross-examination of plaintiff's witnesses as to the rental value.

The charge of the court was entirely adequate and was in no degree misleading.

OPINION BY MR. JUSTICE FRAZER, April 16, 1917:

Defendant appeals from the judgment of the Court of

Common Pleas entered on a verdict for plaintiff award-
ing the sum of $13,865 damages for land taken, or in-
jured, by the relocation, straightening and widening of
defendant's right of way. The errors assigned are to
the charge of the court, and various rulings on the admis-
sion and rejection of testimony touching the question of
damages.

The first assignment of error complains that the por-
tion of the charge quoted was erroneous in that it per-
mitted the jury to fix the damages not upon the value
of the property for the purposes for which it was actual-
ly available at the time of the appropriation, but upon
the value incident to the possible future growth of the
community. The trial judge stated in part that "the
witnesses gave their reasons for arriving at the conclu-
sion that this was not only a very valuable piece of land
as a farm; that it was available for town lots or plots in
larger or smaller tracts; that within the last twenty-
five or thirty years a good many plots of land have been
laid out and have been sold at various prices, and basing
their opinions upon the sale of lands thereabouts and of
the possible future growth of the community, they ar-
rived at the figures to which they have testified. This
is a proper way of arriving at a conclusion under the
facts of this case, and it is for you to take into considera-
tion their accuracy and whether their opinions are en-
titled to the weight plaintiff asks to be given to them."
The jurors, in our opinion, were not misled by this in-
struction. The rule in ascertaining the measure of dam-
ages is that the jury may consider not only the present
use and condition of the property, but such use to which
it was then adapted, and prospective advantages at the
time attaching to it a present value for any purpose to
which it could reasonably be anticipated the land would
in the future be applied, excluding, however, speculative
values: Marine Coal Co. v. Pittsburgh, McKeesport &
Youghiogheny R. R. Co., 246 Pa. 478. The instruction
quoted is not open to defendant's objection that the jury

was permitted to find speculative damages. Plaintiff's land was suburban property and, as stated in the charge, a number of similar tracts in the neighborhood had been recently plotted and sold as building lots. The possibility of utilizing the land in question for this purpose was not therefore merely remote and speculative, but a legitimate prospect for consideration by the witnesses and the jury in forming their opinion as to its present value.

The second assignment complains of that part of the charge which permitted the jury, in fixing the damages to the land as of the time of the taking, to consider the "different elements that enter into the damages such as the inconvenience in getting from one part of the farm to the other; the destruction of the living spring; the damage to the orchard; the cutting off of the view; the use of the old road as compared with the new one which was put in by the defendant company, and in this way to add a total, as it were, of the entire amount of damage caused to the farm taken as a whole." This instruction defendant contends authorized the jury to ascertain these various items of damage separately, and arrive at a total by adding them together. No claim is made that the enumerated elements were not proper for the consideration of the jurors in forming their estimate of the damages, but that the instruction permitted the fixing of a specific sum for each element separately, and by aggregating the several amounts reach a verdict. As separate items the evidence would be improper. The several elements were admissible, however, as affecting the market value of the land, and not otherwise: Parry v. Cambria & Indiana R. R. Co., 247 Pa. 169. While the latter portion of the excerpt standing alone is misleading, the trial judge begins this part of the charge by instructing the jury to find the damage to the farm in its entirety as it was at the time of the taking, and that in arriving at the extent of the injury they might "take into consideration the different elements that enter into

the damages," following this statement with a reference to the items quoted above. In view of the introductory statement the clause as a whole is not open to criticism.

The third assignment alleges the charge as a whole to be inadequate. The court's instructions were quite brief considering the amount of testimony taken; no request, however, was made by defendant for a more extended charge, nor were points submitted asking for specific instructions. Consequently defendant is not in a position to complain of what was not said to the jury; and this court will not reverse a lower court, under such circumstances, unless the tendency of the charge as a whole was to the prejudice of the party against whom a verdict was returned, and was not, in expression or tone, a fair and unbiased judicial presentation of the case. To what extent the trial judge will go into details in discussing the evidence is necessarily largely within his discretion: Fowler, Executrix, v. Smith, 153 Pa. 639; Ensminger v. Hess, 192 Pa. 432. The court gave a brief outline of the case, enumerated the contentions of each party, and the substance of the testimony of the expert witnesses relating to the question of damages, instructed the jurors they were to find the damage to the farm in its entirety as it was at the time of the taking, and referred briefly to the question of credibility of witnesses, leaving to the jury to determine the amount of the verdict. A careful consideration of the charge as a whole fails to show such inadequacy as to require the granting of a new trial.

The fourth and ninth assignments are to the refusal of the court to permit defendant, on cross-examination of plaintiff and one of his witnesses, to ask the rental value of plaintiff's farm. Both witnesses testified the value of the property for farming purposes did not represent the actual value of the land; that it had a greater value for other purposes, such as a country estate for a person living in the city desiring a suburban residence, or for building sites, and that its value was beyond the ordinary farm intended exclusively for agricultural pur-

poses. One witness testified he was unable to fix the value as farming land, and did not consider it from that point of view. The witnesses generally were asked the rental value, or the amount received as rent from the place for farming purposes. While the rental value might be a proper element to consider in forming an opinion of the market value of a property under certain conditions, or in a case where its use was for agricultural purposes exclusively, yet the facts of this case and the testimony all tend to show the property was adaptable for other purposes, and possessed a much higher value for such purposes than if used for general farming. In fact it appears land was too valuable in that locality to be a paying investment from the standpoint of a farmer. To take an extreme illustration, the rental value for farming purposes of a piece of land in the heart of a city would be of little value as a standard for fixing the market value of the property. In fact the income from rents never can constitute an exclusive standard for that purpose: Forster v. Rodgers Brothers, 247 Pa. 64. In view of the testimony in the present case the action of the trial judge is not ground for reversal.

The fifth to the eighth assignments, inclusive, refer to the action of the trial judge in allowing plaintiff on redirect examination of his own witnesses, to ask them to state the selling prices of other similar properties in the neighborhood. The eleventh to the eighteenth assignments, inclusive, complain of the action of the court in permitting plaintiff, on cross-examination of defendant's witnesses, to show the prices received for particular sales of real estate in the neighborhood. These assignments raise substantially the same question and can be considered together. The court below, in its opinion discharging the rule for a new trial, gave as a reason for its action in admitting such testimony, that defendant first introduced the subject-matter by proving prices obtained for other properties in the neighborhood, and having brought out the prices paid for particular properties,

plaintiff was entitled to follow that line of examination by showing additional sales, and thus place before the jury the entire information upon which the witness based his opinion. The question as to when, and under what circumstances, evidence of the prices obtained for other properties in the neighborhood is admissible we have considered in numerous cases, and definitely settled. The most recent expression of opinion on the subject will be found in Rea v. Pittsburgh & Connellsville R. R. Co., 229 Pa. 106; Roberts v. Philadelphia, 239 Pa. 339; Girard Trust Co. v. Philadelphia, 248 Pa. 179, and Llewellyn v. Sunnyside Coal Co., 255 Pa. 291.

In the first case cited, following the general rule that while a consideration of particular sales in the neighborhood will not be allowed to be offered in chief, we said questions regarding such sales are proper in cross-examination to test the accuracy of the witness, and the extent of his knowledge; and, following the principle laid down in Davis v. Penna. R. R. Co., 215 Pa. 581, to the effect that the largest latitude should be allowed on cross-examination in cases of this class, state "In fact, any and every pertinent question may be put to him on cross-examination which will enable the jury to place a fair estimate upon his testimony as to the damages sustained" by the improvement or taking.

In the Roberts case we held that witnesses testifying on behalf of plaintiff to values, could not be cross-examined as to prices at which other properties sold for in the neighborhood, or at which other properties were held for sale, and said: "It is admissible on cross-examination of a witness to inquire whether he knew of certain sales made of properties in the neighborhood, only because the value of the opinion he has expressed depends in a large degree upon his familiarity with ruling prices. Except as he have such knowledge he is not qualified to testify; the greater that knowledge the better is he qualified to speak, and the greater the weight of his opinion. To introduce the prices, however, at

which the properties sold is to suggest to the jury a comparison which they are unable to make in order to determine what credit they are to give the witness. No warrant can be found in any of our cases for such practice."

The defendant relies on the Roberts case as establishing a different rule from that laid down in the case of Rea v. Pittsburgh & Connellsville R. R. Co., supra. This contention is without foundation, however, as appears from the case of Girard Trust Co. v. Philadelphia, supra. In that case this court held that an expert who bases his estimates of value of property upon prices obtained on sales of similarly located land in the neighborhood, may be cross-examined to test his accuracy and knowledge as to the conditions of these sales, including the prices. It is there stated: "There is nothing in the opinion in the Roberts case which, in any manner, or to any degree, altered or was intended to change the established rules relating to the examination of expert witnesses;...... but, generally speaking, even on cross-examination, such a witness cannot in the first instance be interrogated concerning the prices brought at sales not relied upon by him in making his original estimate of value, although, if he has relied on some sales in the neighborhood, he may be asked, without mention of prices, if he knew of other sales of properties similarly located and whether he considered them, and if not, why not; the course which the investigation may take after that depends largely upon the discretion of the trial judge, constantly keeping in mind the fact that the cross-examination is merely to test the good faith and accuracy of knowledge of the witness, and that prices paid at particular sales of other properties are not, in themselves, evidence of the market value of the land in controversy."

Probably the last case on the subject is Llewellyn v. Coal Co., supra, where we said (p. 296): "The rule as established by our cases is that, while a party cannot bring out on cross-examination evidence of the price paid for other property, unless the witness has already testi-

fied that his opinion is based on his knowledge of the sales of such property, yet, if he has so testified, he may be cross-examined as to prices, for the purpose of testing his good faith and credibility."

In the present case defendant was permitted, without objection, to cross-examine witnesses for plaintiff concerning other sales of realty, and the prices obtained therefor. In offering testimony of this kind it is but natural that the party should use sales least favorable to his opponent, and the result of the cross-examination to test the credibility and extent of knowledge of the witness as to such sales, might leave the jury in possession of only a part of the facts forming the basis of the witness's opinion. Additional facts, such as the prices of other properties in the neighborhood similarly situated, may also have been considered as the basis of the opinion given, and unless these matters are placed before the jurors they are in no position accurately to gauge the value of the testimony. Under such circumstances when defendant questions the witness regarding other sales the door for the admission of such testimony is open. To what extent the investigation along this line should be carried is a matter within the sound discretion of the trial judge, as was stated in Girard Trust Co. v. Philadelphia, supra.

A familar rule of evidence is that where a witness testifies to part of a transaction, the opposing party may insist upon the complete transaction being shown, even though such evidence be otherwise inadmissible: Postens v. Postens, 3 W. & S. 127; Hamsher v. Kline, 57 Pa. 397; and we see no reason why that rule should not be applied in cases of this class.

McElheny et al. v. Pittsburgh, Va. & Charleston Ry. Co., 147 Pa. 1, relied upon by the trial judge, was a proceeding to assess damages for the appropriation of plaintiff's land by defendant company; in that case in a per curiam opinion it is said (p. 5): "The single assignment of error is to the admission of evidence as to the location

STONE *v.* DEL., LACK. & W. R. R. CO., Appellant. 467

1917.]                    Opinion of the Court.

and height of the highway bridge. It is sufficient to say, in answer to this objection, that the subject was introduced by the appellant (defendant) upon the cross-examination of the plaintiff's witness. If we concede that it would not have been competent evidence in chief on the part of plaintiffs, the defendant having brought it out, the plaintiffs were clearly entitled to follow it up by the questions referred to."

In the recent case of Penna. R. R. Co. v. City of Reading, 249 Pa. 19, the same rule was applied. In proceedings for the assessment of damages for the taking of land, a witness called by defendant to testify to market values was asked, on cross-examination, whether he had previously demanded more than a stated sum for damages to his property, and admitted having asked a greater amount, and we there held the court was not chargeable with error in permitting him, on redirect examination, to state he recovered a less amount than he had previously demanded.

While the scope of the testimony in this case went beyond the confines of former rulings of this court in the admission of testimony relating to prices paid for other properties similarly situated, the trial judge did not abuse his discretion in permitting the introduction of evidence of prices of sales in the community other than those brought out by defendant in cross-examination. The special instances referred to by defendant might well be cases where the consideration, for reasons with which we are not concerned, was much less than the market value of the property. Other elements not known to the jury may have entered into the transactions and affected the prices. The rule which excludes evidence of specific value should, therefore, require the admission of testimony showing the prices of all sales in the immediate neighborhood relied upon by the witness if the opposite party so wishes, in order that the real basis of the knowledge upon which the witness testifies may be laid before the jury.

The judgment is affirmed.