GEORGE W. AND ILMA SOUTH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
SOUTH v. COMMISSIONER
Docket No. 1805-76.
United States Tax Court
T.C. Memo 1980-86; 1980 Tax Ct. Memo LEXIS 504; 39 T.C.M. (CCH) 1279; March 20, 1980, Filed Robert M. Tyle, for the petitioners. William S. Miller, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE FALK, Special Trial judge: Respondent determined deficiencies of $137.40 and $1,217.46, *506 respectively, in petitioners' 1969 and 1970 federal income taxes. We must decide whether petitioners are entitled in either year to a net operating loss deduction under section 172 and if so, the amount thereof. [3] Resolution of the issue depends upon the amounts of (a) a deduction, if any, for business transportation for 1972 to which petitioners are entitled under section 162 and (b) a casualty loss deduction for 1972 to which petitioners are entitled under section 165. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. Petitioners filed their joint 1969, 1970, and 1972 federal income tax returns with the Internal Revenue Service Center at Andover, Massachusetts. At the time the petition herein was filed, they resided in Corning, New York. Petitioner George W. South was an electronics technician for Corning Community College, Corning, New York, during 1972. The college had approximately 2,000 pieces of audio-visual equipment such as cameras, video tape recorders, 16 millimeter projectors, and other *507 electrical equipment which it was his duty to maintain and repair. In the performance of his duties, George regularly drove his own automobile out of town and between the scholl's main campus and school number 3 and to electronics parts stores in Corning. He was reimbursed for the cost of his transportation out of town, but not for local trips. George worked twelve months in 1972, five days a week, and drove an average of eight miles each day on such local trips; an aggregate of 2,080 miles during the year. On June 23, 1972, petitioners' house and its contents were completely destroyed by flood waters resulting from hurricane Agnes. Petitioners applied to the Small Business Administration (hereinafter referred to as the SBA) for a disaster loan of $32,000, claiming a loss of $48,534. On the loan application, they stated that the purpose of the loan was to obtain $22,000 to acquire a home and $10,000 to acquire household furnishings. The SBA made petitioners a loan and, later, forgave repayment of $5,000 of it. They did not recover anything further for their loss by way of insurance or otherwise. On their 1972 federal income tax return, petitioners claimed a deduction of *508 $48,365.03 in respect of the casualty, as follows: Realty
$21,198.00
Personalty
27,267.03
Total
$48,465.03
Less sec. 165(c)(3) limitation
100.00
Deductible loss
$48,365.03
Respondent determined that the allowable deduction was $28,858, as follows: Realty
$19,198.00
Personalty
14,760.00
Total
$33,958.00
Less sec. 165(c)(3) limitation
100.00
SBA loan forgiveness
5,000.00
Total
5,100.00
Deductible loss
$28,858.00
Petitioners now concede that the amount of the loss as claimed should be reduced by $5,000; i.e., the amount of the SBA indebtedness which was forgiven. The personal property lost consisted of approximately 1,200 to 1,500 books and 6 encyclopedias, 7 rooms of furniture, household furnishings and appliances, fixtures, tools, clothing, and other personal goods. In the aggregate, it had a fair market value of $27,300 immediately before the casualty and was worthless immediately thereafter. Petitioners' basis for the personal property was $16,000. Respondent does not dispute that petitioners' real estate had a fair market value of $21,198 immediately before the casualty nor that its basis in their hands was *509 of an equal amount. Neither does respondent contend that the improvements on the property were not completely destroyed. Respondent maintains, however, and we find, that petitioners' real estate had a fair market value of $2,000 after the casualty. OPINION Issue 1. Transportation Deduction
Petitioners claimed an employee expense deduction on their 1972 return, including $353.04 for business use of their automobile by petitioner George W. South which respondent disallowed in its entirety for lack of substantiation. The amount in issue was calculated using the optional standard mileage rate provided by Rev. Proc. 70-25, 1970-2 C.B. 506, on the basis of 2,942 miles. We are persuaded as the result of George's testimony, and have found as a fact, that he used his automobile in the performance of his services as an employee of Corning Community College to run local errands in the aggregate of 2,080 miles in 1972 for which he was not reimbursed. Accordingly, an employee business transportation expense deduction of $249.60 is allowed. See sec. 1.162-17(a), Income Tax Regs.
Issue 2. Casualty Loss Deduction
There is no dispute as to the amount of the loss *510 attributable to the destruction by flood of the improvements to petitioners' real estate. In contention is whether the value of the land itself ($2,000) may be included in the loss and the amount of the loss of personalty. Section 165(c)(3) permits individuals to deduct losses suffered on the damage to and destruction of nonbusiness property by reason of fire, storm, or other casualty to the extent that each such loss exceeds $100 and is not compensated for by insurance or otherwise. The measure of the loss is the difference between the fair market value of the property immediately before the casualty and its fair market value immediately thereafter, but not exceeding its adjusted basis. Helvering v. Owens, 305 U.S. 468 (1939); Lamphere v. Commissioner, 70 T.C. 391 (1978); sec. 1.165-7(b)(1), Income Tax Regs.
To establish the amount of the loss, the relevant fair market values "shall generally be ascertained by competent appraisal." Sec. 1.165-7(a)(2)(i), Income Tax Regs. Petitioners obtained appraisals of the fair market value of the house before and after the flood from two local real estate agents. The testimony of neither is before the Court *511 and their appraisal reports do not state on what method or methods they were based. The circumstances are such here that we draw no inference from the absence of their testimony that the testimony of these persons would be unfavorable to petitioners, but neither can we give their appraisals any weight. Physical damage to property caused by a flood is clearly a casualty within the purview of section 165(c)(3), and respondent concedes that petitioners suffered some such damage. The questions to be resolved, then, are: (a) the amount of the actual loss sustained and (b) the adjusted basis of the property in petitioners' hands. The burden of proving these amounts rests with petitioners. Pfalzgraf v. Commissioner, 67 T.C. 784, 787 (1977); Axelrod v. Commissioner, 56 T.C. 248, 256 (1971). The opinion of property owners as to the value of their property is admissible in evidence without further qualification because of the owners' special relationship to their property. District of Columbia Redevelopment Land Agency v. 13 Parcels of Land, 534 F.2d 337, 339-340 (D.C. Cir. 1976); United States v. Sowards, 370 F.2d 87, 92 (10th Cir. 1966); *512 Kinter v. United States, 156 F.2d 5 (3d Cir. 1946); Harmon v. Commissioner, 13 T.C. 373 (1949); see also Fed. R. Evid. 701; 2 Jones, Evidence, sec. 14:6, p. 599 (6th ed. 1972); 3 Wigmore, Evidence, sec. 714, p. 50 (1970 rev.). But, we are not bound to accept that testimony at face value, even though it is uncontradicted, if it appears to be improbable, unreasonable, or offered solely to serve the self-interests of the taxpayer. See Fixel v. Commissioner, T.C. Memo. 1974-197, affd. without opinion 511 F.2d 1400 (5th Cir. 1975); United States v. 3,698.03 Acres of Land, Etc., 416 F.2d 65 (8th Cir. 1969). While the owners of property are competent to testify as to its value, the weight to be given their testimony will depend upon their knowldge, experience, method of valuation, and other relevant considerations. Biddle v. United States,175 F. Supp. 203, 204 (E.D. Pa. 1959); see Jenny v. Commissioner,T.C. Memo. 1977-142. Petitioners maintain that their real property was worthless after the flood. In essence, their argument is that the *513 lot was so strewn with the remains of their house, other structures, sewage, mud, and other debris that "it would have cost thousands to have the debris removed." In fact, however, petitiones did not pay to have the debris removed. Rather, petitioners and members of their family and the Army Corps of Engineers cleared the lot without the expenditure of any monies by petitioners. In Lamphere v. Commissioner,supra, we held that the "cost of repairs" method for establishing the amount of a casualty loss under section 1.165-7(a)(2)(ii), Income Tax Regs., is satisfied by actual repairs expenditures, but not by an estimate. Accordingly, we conclude here that the estimated "thousands" to have the debris removed is not allowable as part of the loss of value under the "cost of repairs" method. Furthermore, inasmuch as the estimated costs of clearing the lot was the foundation for petitioners' zero appraisal of the value of their property after the flood, we cannot give any weight to it. "It is just as bad to back up a forbidden path as it is to walk up it." Greenberg v. United States,295 F.2d 903, 909 (1st Cir. 1961). Petitioners having failed to *514 carry their burden of proof to overcome respondent's determination that the real property had a value of $2,000 after the flood, that determination must be sustained. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
As for the personalty, we are satisfied that petitioners lost in the flood some 1,200 to 1,500 books and 6 encyclopedias, 7 rooms of furniture, household furnishings and appliances, fixtures, tools, clothing, and other personal goods of a value equal to the amount of the loss claimed on their 1972 return. The problem here for petitioners, however, is in establishing their basis for those articles. Some of the articles of furniture, children's clothing, and books were gifts to petitioners and their children, and there is no evidence of the donors' basis in those instances. See sec. 1015(a). The basis of other articles was estimated by reference to a 1972 mail order house catalog, although most of the articles were purchased before 1972 and were not purchased from that mail order house. Most of the books, the total number of which was estimated, were estimated to cost $4 each. Accordingly, we have an *515 estimate upon an estimate. Further, many of the books were purchased as long as 12, 14, or 16 years before the casualty, when some books could be purchased for less than $4. The matter is not susceptible of precise determination on this record, but, doing the best we can with the information before us, we have found that the personalty lost in the flood had a basis of $16,000 in petitioners' hands. Thus, we hold that petitioners are entitled to a casualty loss deduction for 1972 in the amount of $30,098. [4]
In accordance with the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignement, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. The amount of the medical expense deduction allowable under sec. 213 for 1970 turns on our resolution of the primary issue.↩
4. ↩
Loss to realty
$19,198
Loss to personalty
16,000
Subtotal
$35,198
Less: SBA loan forgiveness
$5,000
Sec. 165(c)(3) limitation
100
Total
5,100
Deductible loss
$30,098