BLAZE A. AND LORRAINE M. MEROLA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Merola v. Commissioner
Docket No. 1864-76.
United States Tax Court
T.C. Memo 1980-88; 1980 Tax Ct. Memo LEXIS 497; 39 T.C.M. (CCH) 1285; T.C.M. (RIA) 80088; March 24, 1980, Filed Robert M. Tyle, for the petitioners. William S. Miller, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE FALK, Special Trial Judge: Respondent determined deficiencies of $2,149.62 and $218.49, respectively, in petitioners' 1969 and 1972 federal income taxes. Concessions *499 having been made, the question remaining for decision is whether petitioners are entitled to a casualty loss deduction for 1972 under section 165(a) in excess of the amount allowed by respondent. Whether, and, if so, in what amount, petitioners are to be allowed a net operating loss deduction for 1969 under section 172 also turns on our resolution of that question. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. Petitioners filed their joint 1969 and 1972 federal income tax returns with the Internal Revenue Service Center at Andover, Massachusetts. At the time the petition herein was filed, they resided at Painted Post, New York. Petitioners owned a two story house in Painted Post, New York, which had previously been owned by petitioner Lorraine M. Merola and her first husband. Who between Lorraine and her first husband had title to the house and how much they paid for it has not been established. In about 1958 Lorraine was divorced and bought her former husband's interest in the property for $3,500. After her marriage to petitioner Blaze A. Merola and before June of 1972, petitioners made various capital improvements to the property *500 which cost them approximately $11,500. The house was in very good condition in 1972. In June of 1972, hurricane Agnes struck the area and caused severe flooding and damage to petitioners' house. Water covered the first floor to within five inches of the ceiling. Everything in the cellar was destroyed. On the first floor, walls, panelling and insulation were ruined. Petitioners spent $8,000 to put the house back into its pre-flood condition. The fair market value of the home was $18,000 immediately before the flood and $6,000 immediately thereafter. The house had a basis in petitioners' hands in excess of $12,000. Petitioners received a disaster loan from the Small Business Administration (hereinafter referred to as the SBA). Sometime thereafter, the SBA forgave repayment of $5,000 of the loan. On their joint 1972 federal income tax return, petitioners claimed a casualty loss deduction under section 165(a) in the amount of $29,411.92. Petitioners now concede that that amount should be reduced by $5,000; i.e., the amount of the SBA indebtedness which was forgiven. In his notice of deficiency, respondent allowed $11,018.58 of the claimed deduction, but disallowed *501 the remainder for lack of substantiation. He concedes a loss in the amount of $10,418.58 for damage to personal property. OPINION The issue here is purely factual. The parties are in agreement as to the value of petitioners' personalty lost in the hurricane. Petitioners concede that the amount of the loss should be reduced by the amount ($5,000) of the SBA loan forgiveness. The only dispute, then, is the amount of the loss to the realty, respondent contending that petitioners have failed to show the decrease in fair market value of the house and to establish its basis, while petitioners assert that they have met their burden of proof. Section 165(c)(3) permits individuals to deduct losses suffered on the damage to and destruction of nonbusiness property by reason of fire, storm, or other casualty to the extent that each such loss exceeds $100 and is not compensated for by insurance or otherwise. The measure of the loss is the difference between the fair market value of the property immediately before the casualty and its fair market value immediately thereafter, but not exceeding its adjusted basis. Helvering v. Owens, 305 U.S. 468 (1939); Lamphere v. Commissioner, 70 T.C. 391 (1978); *502 sec. 1.165-7(b)(1), Income Tax Regs.
To establish the amount of the loss, the relevant fair market values "shall generally be ascertained by competent appraisal." Sec. 1.165-7(a)(2)(i), Income Tax Regs. Petitioners obtained appraisals of the fair market value of the house before and after the flood from two local real estate agents. The testimony of neither is before the Court and their appraisal reports do not state on what method or methods they were based. The circumstances are such here that we draw no inference from the absence of their testimony that the testimony of these persons would be unfavorable to petitioners, but neither can we give their appraisals any weight. The opinion of a landowner as to the value of his or her property is admissible in evidence without further qualification because of the owner's special relationship to that property. District of Columbia Redevelopment Land Agency v. 13 Parcels of Land, 534 F.2d 337, 339-340 (D.C. Cir. 1976); United States v. Sowards, 370 F.2d 87, 92 (10th Cir. 1966); Kinter v. United States, 156 F.2d 5 (3d Cir. 1946); Harmon v. Commissioner, 13 T.C. 373 (1949); *503 see also Fed. R. Evid. 701; 2 Jones, Evidence, sec. 14:6, p. 599 (6th ed. 1972); 3 Wigmore, Evidence, sec. 714, p. 50 (1970 rev.). But, we are not bound to accept that testimony at face value, even though it is uncontradicted, if it appears to be improbable, unreasonable, or offered solely to serve the self-interests of the taxpayer. See Fixel v. Commissioner, T.C. Memo. 1974-197, affd. without opinion 511 F.2d 1400 (5th Cir. 1975); United States v. 3,698.63 Acres of Land, Etc., 416 F.2d 65 (8th Cir. 1969). While the owners of property are competent to testify as to its value, the weight to be given their testimony will depend upon their knowledge, experience, method of valuation, and other relevant considerations. Biddle v. United States, 175 F. Supp. 203, 204 (E.D. Pa. 1959); see Jenny v. Commissioner, T.C. Memo. 1977-142. We found petitioner Blaze A. Merola's testimony at the trial that the property had a fair market value of $18,000 immediately before the flood and $6,000 immediately afterwards to be candid, informed, and credible. Further, his description of *504 the damage and the costs to restore the property to its pre-flood condition supports the conclusion that petitioners' loss to their realty was $12,000. The adjusted basis of the property in petitioners' hands clearly exceeded that amount. Sec. 1011(a). Thus, we hold that petitioners are entitled to a casualty loss deduction for 1972 in the amount of $17,318.88. [3]
In accordance with the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. ↩
Loss to realty
$12,000.00
Loss to personalty
10,418.58
Subtotal
$22,418.58
Less: SBA loan forgiveness
$5,000
Sec. 165(c)(3) limitation
100
Total
5,100.00
Deductible loss
$17,318.58